UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY J. SCHUETTE,

    Plaintiff,

v.

JACKSON COUNTY,

    Defendant.
_____/

Case No. 18-10497

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR RECONSIDERATION OF ITS MOTION
FOR SUMMARY JUDGMENT (ECF NO. 59)**

**A.     PROCEDURAL HISTORY**

Plaintiff, Tommy Schuette, filed this lawsuit, alleging that Steven P. Rand, the Sheriff of Jackson County, and Jackson County ("County") discriminated against him based on his disability. (ECF No. 1). He subsequently filed an Amended Complaint alleging that: (1) Rand and the County subjected him to a hostile work environment on the basis of his disabilities (hearing loss and post-traumatic stress disorder) in violation of the Americans with Disabilities Act ("ADA") and the Persons with Disabilities Civil Rights Act ("PWDCRA"); and (2) the County retaliated against him by terminating his employment after he reported Rand's alleged conduct, which also included discriminatory actions against other individuals in the work place on the basis of race, sex and physical characteristics,

1

in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Elliot-Larson Civil Rights Act ("ELCRA"). (ECF No. 14). Rand filed a Motion to Dismiss and Alternatively for Summary Judgment (ECF No. 33), and the County filed a Motion for Summary Judgment (ECF No. 35). After briefing and a hearing on the motions, the court granted Rand's Motion to Dismiss and granted in part and denied in part the County's Motion for Summary Judgment. (ECF No. 54). The County timely filed the instant motion for reconsideration. (ECF No. 59). For the reasons that follow, the court will **DENY** this motion.

## B. LEGAL STANDARD

Local Rule 7.1(h)[1] governs motions for reconsideration and provides as follows with respect to non-final orders such as the court's decision on Schuette's motion *in limine*:

> (2) Non-Final Orders. Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought only upon the following grounds:
>
>   (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the

---

[1] At the time Jackson County filed its motion, a prior version of Local Rule 7.1(h) was in effect. The new version, quoted above, went into effect on December 1, 2021. Local Rule 1.1(d) provides that current rules apply to all proceedings pending at the time they take effect, unless, in the opinion of the court, the application of the new rule would not be feasible or would work an injustice. Here, the court finds that application of the new rule is feasible and no injustice results from its application.

> mistake was based on the record and law before the court at the time of its prior decision;
>
> (B) An intervening change in controlling law warrants a different outcome; or
>
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. L.R. 7.1(h)(2). "A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected arguments or to introduce new arguments." *Southfield Educ. Ass'n v. Bd. Of Educ. of Southfield Pub. Schs.*, 319 F. Supp. 3d 898, 901 (E.D. Mich. 2018).

### C. ANALYSIS

The County raises three issues for reconsideration of the court's decision on its Motion for Summary Judgment. (ECF No. 59). First, it argues that the court erred as to Schuette's ADA claim for hostile work environment because he cannot perform the "essential functions of the job" of Lieutenant. *Id.* at PageID.1563-75. Second, it argues that the court erred as to Schuette's claims for retaliation because he has not suffered an adverse employment action. *Id.* at PageID.1575-81. Third, it argues that this court erred as to Schuette's ADA claim for hostile work environment because it did everything within its power to respond to Rand's harassment, which precludes its liability for Rand's actions. *Id.* at PageID.1581-85.

*1. Essential Function of Road Patrol Lieutenant.*

As to the first issue, the County argues that the court erred in its analysis of whether Schuette can perform the "essential function of the job" of Road Patrol Lieutenant. The County cites a series of cases that note that a job function can be essential even if rarely performed and underscore the deference to be afforded an employer's judgment concerning the essential functions of a job. Here, the County argues that it has provided evidence that an essential function of a Lieutenant's job is to go out into the field—even if infrequently. Because Schuette cannot perform this job without accommodation, according to the County, he may not sue under the ADA.

But the County did not make this argument in the underlying motion as it only challenged Schuette's ability to do the SRT Commander job, not the Road Patrol Lieutenant job. Thus, the court need not address this issue because it is a new argument. "A motion for reconsideration is not intended as a means to allow a losing party . . . to introduce new arguments." *Saltmarshall v. VHS Children's Hosp. of Michigan*, 402 F. Supp.3d 389, 393 (E.D. Mich. 2019); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("[P]arties should not use [motions for reconsideration] to raise arguments which could, and should, have been made before judgment issued." (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). As the court noted in its

opinion, the County only challenged Schuette's ability to perform the job of SRT Commander in its Motion for Summary Judgment—not Lieutenant. (ECF No. 54, PageID.1497-98). And in its reply, even though Schuette responded that the job in question was Road Patrol Lieutenant, the County declined to make the argument it makes here. (*See* ECF No. 45, PageID.1265). Indeed, the County did not direct the court's attention to any evidence in the record outlining the responsibilities of a Road Patrol Lieutenant or otherwise discussing what constitutes an essential function of the position. Therefore, because the County is raising a new argument as to this issue, it is not entitled to reconsideration on this score.

      Nevertheless, the court will touch upon the issue to some extent to address the County's assertion that its opinion contained a substantive mistake of law or fact. The County avers that, "[t]he Court held that Plaintiff Schuette's inability as Road Patrol Lieutenant, by virtue of hearing loss, to fulfill his supervisory responsibilities by leaving the office to actively provide oversight in the field is not an "essential function" of his position." (ECF No. 59, PageID.1554). This characterization is inaccurate. Rather, in assessing Schuette's argument that he was qualified for the Road Patrol Lieutenant position, the court found that "whether [Schuette's] inability to go out on the road, something lieutenants 'very seldomly' do, renders him unqualified is, at minimum, a question of fact." (ECF No. 54, PageID.1498-99, quoting ECF 41-15, PageID.1205). In arguing for the

existence of an error, the County argues that "a job function, even if rarely performed, can be nonetheless 'essential.'" (ECF No. 59, PageID.1565). And it adds that "Sixth Circuit precedent similarly accords substantial deference to an employer's judgment as to the essential functions of a job." *Id.* at PageID.1574.

The court agrees that an infrequent task can still be essential to a job. *See e.g.*, *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 727 (6th Cir. 2000) (finding that restraining inmates, even infrequently, is an essential function of the job of a deputy one because "the potential for physical confrontation with inmates exists on a daily basis, and the consequence of failing to require a deputy to perform this function when the occasion arises could be a serious threat to security"); *Mauro v. Borgess Med. Ctr.*, 886 F. Supp. 1349, 1354 (W.D. Mich. 1995) (finding "the need for the surgical technician to place his hands in direct contact with or in the immediate vicinity of the incision," although infrequent, to be an essential function because "such assistance is foreseeable and is essential to the success of the surgical procedure"). Indeed, the court's decision does not suggest otherwise and does not, in the court's estimation, contradict case holdings to the contrary. As noted in its decision, the County did not challenge Schuette's qualifications to serve as a lieutenant. (ECF No. 54, PageID.1498). Therefore, the court limited its analysis to evaluating Schuette's proffer that he was qualified for the position in the light most favorable to him. (ECF No. 41, PageID.1063). The

County now argues that going out on the road is an essential function of the Road Patrol Lieutenant position and cites evidence that it contends supports this point.

Yet, its argument still fails because the evidence it provides does not negate the existence of a genuine dispute of material fact as to whether going into the field is essential to the position of Road Patrol Lieutenant or separately whether Schuette was unable to perform that task. It thus, cannot serve as a basis on which to assert error. The County first addresses Rand's deposition testimony that "very seldom is there an expectation that you're on the road handling a call or doing anything of that nature." (ECF No. 59, PageID.1564; ECF No. 41-15, PageID.1205). To that, it adds the job description for a Road Patrol Lieutenant, which describes the position's essential functions in relevant part:

> As Road Patrol Lieutenant
>
> 1. … confers with shift commanders and detectives regarding incidents and problems …
> \* \* \*
> 10. Investigates citizen complaints against departmental employees.
> \* \* \*
> 12. Performs the duties of other law enforcement jobs in the department as necessary.
>
> 13. Serves as the assistant to the Captain responsible for road patrol operations, including … serving as commander at major crime scenes, coordinating prisoner transfers and performing other command functions as directed.

(ECF No. 59, PageID.1564; ECF No. 59-4, PageID.1597-98). And finally, it argues that Schuette has offered no contrary evidence and that he testified that he cannot safely go on road patrol because of his hearing impairment. (ECF No. 59, PageID.1565).

Beginning with the job description for a Road Patrol Lieutenant, whatever persuasive value this evidence might have, it is too little too late. Indeed, it is only on reconsideration that the County has, for the first time, added to the record the job description for a Road Patrol Lieutenant. Motions for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion." *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 Fed. Appx. 668, 672 (6th Cir. 2003) (quoting *Macdermid Inc. v. Electrochemicals Inc.*, 1998 WL 165137, at *6 n.7 (6th Cir. Mar. 31, 1998)). Despite its complaint that it could not have anticipated the various lines of reasoning in the court's opinion, the County very well should have anticipated a need for this readily available evidence when Schuette argued in his response brief that the job at issue was Road Patrol Lieutenant and that it was "undisputed that with accommodation [he] was able to perform this position." (ECF No. 41, PageID.1063). Indeed, the County referenced both positions, SRT Commander and Road Patrol Lieutenant in its reply, but cited no evidence to establish the essential functions of the latter. (ECF No. 44, PageID.1253).

8

As a result, the County is left with the statements made by former Sheriff Rand in his deposition. Rand testified that "very seldom is there an expectation that you're on the road handling a call or doing anything of that nature." (ECF No. 41-15, PageID.1205). Notably, the question to which Rand was responding was not framed as one seeking a comprehensive listing of the job's essential functions. Hence, unsurprisingly, on its own, the testimony fails to definitively establish the essential functions of a Road Patrol Lieutenant. Rand also stated that Schuette "was still a sworn officer" and kept his badge and gun. *Id.* at 1205-06. He further underscored that the job was "a lot of paperwork" and that "the job never changed" for Schuette. *Id.* As this court already indicated in its original opinion, these statements create a genuine dispute of material fact as to what the necessary functions of a Road Patrol Lieutenant are—a dispute best left for the jury.

Moreover, even if the court considered all of the County's evidence and determined that going into the field is an essential function of a Road Patrol Lieutenant, Schuette has still demonstrated a genuine material dispute as to whether he was capable of performing the essential functions of that job. During his deposition, Schuette testified as follows:

> Q. Did you feel safe at that time with your hearing loss issues being a patrol officer?
>
> A. Yeah. You know, I, I, every situation is different. There's different aspects being a police officer.

9

> Difference being a traffic police officer and running a SWAT crew. Running a SWAT team, absolutely not.
>
> Q. But you weren't doing that?
>
> A. Wasn't doing that now. Would I still have been comfortable performing normal road patrol duties? Absolutely.
>
> Q. But you couldn't hear on the radio?
>
> A. It was definitely tougher for me.
>
> Q. Did you have any issues talking on the cell phone?
>
> A. I have a harder time – it depends whose voice it is.

(ECF No. 33-2, PageID.376). Thus, contrary to the County's claim, Schuette indicated in his testimony that he could perform the job of Road Patrol Lieutenant—despite his impairment. At best, this testimony shows that Schuette may have more difficulty with some tasks, such as communicating over the radio; but whether he could perform the job reasonably is a question of fact best left to the jury.

### 2. *Adverse Action*

Second, the County argues that Schuette did not suffer an adverse action and, therefore, it cannot be liable for retaliation. The County argues that Schuette has not suffered an adverse action because: (1) he has not been discharged; (2) the mere filing of a police report does not constitute an adverse action; and (3) even if

10

a police report could be an adverse action, Schuette has not shown that it was a pretext or filed for false reasons.

As already noted, this court will not consider new arguments raised for the first time in a motion for reconsideration. In its motion for summary judgment, the County argued only that "the County Administrator had a constitutional right to file a complaint" and so the police report could not be the basis for retaliation. (ECF No. 35, PageID.736). In its reply, it repeated this argument and, added arguments that *Younger* abstention applied and Schuette lacked standing to complain of the mistreatment of others. (ECF No. 45, PageID.1270-71). The County made no argument that Schuette was never discharged or that Schuette failed to show pretext. Accordingly, the court will not address these arguments for the first time in the context of a motion for reconsideration.

However, the court will address the County's contention that the court made an error of law regarding the adverse action prong of the retaliation test. To establish a *prima facie* case of retaliation under Title VII, § 1981, and the ELCRA, a plaintiff must show (1) "he engaged in an activity protected by [§ 1981, Title VII, and the ELCRA];" (2) "his exercise of such protected activity was known by the defendant;" (3) "thereafter, the defendant took an action that was 'materially adverse' to the plaintiff;" and (4) "a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*,

11

746 F.3d 714, 730 (6th Cir. 2014). In this court's decision, it recognized that "courts have found that filing of false criminal charges may constitute a materially adverse action." (ECF No. 54, PageID.1532). And in doing so, the court relied on two cases: *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996), and *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 606 (7th Cir. 1999).

The County now relies on *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1269 (10th Cir. 2005) for the proposition that the mere filing of a police report does not constitute an "adverse employment action." In *Dick*, the plaintiff's coworkers, allegedly instructed by their supervisor, filed a police report against her. Relying on *Berry*, the plaintiff claimed that doing so constituted an adverse employment action. The Tenth Circuit rejected her claim, finding that *Berry* merely stood for the proposition "that criminal prosecution involving a public criminal trial would have 'an obvious impact' on the employee's 'future employment prospects'" and that a criminal trial may "carr[y] a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* (quoting *Berry*, 74 F.3d at 986).

The first problem with the County's argument and the Tenth Circuit's decision is that they both require a plaintiff, in order to prove a retaliation claim, to show that he suffered an "adverse employment action." But such a requirement does not comport with the standard applied in this circuit. As the Sixth Circuit

12

explained in *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014), the "materially adverse action" element of a Title VII retaliation claim is substantially different from the "adverse employment action" element of a Title VII discrimination claim. Indeed, materially adverse actions are not "limited to [the] narrow definition of an 'adverse employment action' that includes only actions affecting the terms, conditions or status of employment." *Barrow v. City of Cleveland*, 773 Fed. Appx. 254, 262–63 (6th Cir. 2019) (quoting *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008) (citation omitted)). Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted)). "This showing is less burdensome than what a plaintiff must demonstrate for a Title VII discrimination claim." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 776 (6th Cir. 2018) (citation omitted). Accordingly, the court finds *Dick* inconsistent with Sixth Circuit and Supreme Court precedent holding that a materially adverse action is substantively different from an adverse employment action.

Additionally, the court in *Dick* does not apply the requisite fact-specific analysis. As explained in *Laster* and *Burlington N. & Santa Fe Ry. Co. v. White*,

13

548 U.S. 53 (2006), "[i]n analyzing the significance of any given act of retaliation, context matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" *Laster*, 746 F.3d at 731 (quoting *Burlington N.*, 548 U.S. at 69) (internal quotation marks omitted). The Supreme Court expounded on this need for a fact-specific analysis with the following example:

> A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

*Id.* at 82 (citing 2 EEOC 1998 Manual § 8, p. 8-14). "An act that would be immaterial in some situations is material in others." *Id.* (citation omitted). In *Dick*, the court concluded that the filing of a police report, unlike where criminal charges are brought to trial, did not carry a "significant risk of humiliation, damage to reputation, and concomitant harm to future employment prospects." The court did not, however, assess whether "a reasonable employee would have found the challenged action[s] materially adverse"; that is, whether the challenged action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster*, 746 F.3d at 719. Here, Schuette contends that the filing

14

of a false police report, which could preclude him from seeking other employment with the County, would have dissuaded a reasonable person from making a claim of discrimination. Further, the court notes that a reasonable police officer might well be dissuaded from asserting a discrimination claim when faced with a false claim of criminal conduct, which could negatively impact such an officer's career and employment prospects. Such a negative impact meets the "relatively low bar" of a materially adverse action required for a retaliation claim. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007).

Further support for this conclusion can be found in *Aviles*, where the Seventh Circuit held that a "a false report to the police that Aviles was armed and lying in wait outside the plant could certainly be construed as a retaliatory action meant to discourage Aviles from pursuing his claim." 183 F.3d at 606. The Seventh Circuit, applying the requisite lower standard for a materially adverse action, noted that "the Title VII retaliation provision is broad enough to contemplate circumstances where employers might take actions that are not ostensibly employment related against a current employee in retaliation for that employee asserting his Title VII rights." *Id.* at 606. *Aviles* aligns more with applicable Sixth Circuit and Supreme Court precedent than *Dick*. Thus, contrary to the County's argument, the court finds that *Dick* provides no basis to revisit its decision denying summary judgment on Schuette's retaliation claims.

As a result, the County's motion for reconsideration as to Schuette's retaliation claims (Counts I, II, and IV) is **DENIED**.

### 3. *Affirmative Defense*.

For similar reasons as the court's rejection of its first argument, the County's argument that it cannot be liable for hostile work environment because it exercised reasonable care and took all available actions to correct the problem also fails. This is a new argument, which, as already noted, is inappropriate in a motion for reconsideration. As the court highlighted in its opinion, the County did not raise this affirmative defense in its summary judgment briefing. (ECF No. 54, PageID.1520-22). Consequently, the court declined to consider it, particularly in light of Schuette's inability to respond to such a defense. Moreover, the defense requires consideration of two factors: whether "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) [] the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). The County addressed neither in its original briefing and, thus, the court's failure to grant the motion on this basis creates neither a palpable error nor a miscarriage of justice. Furthermore, the County has raised this defense in its Motion for Leave to File Second Motion for Summary Judgment. (ECF No. 65).

16

The court finds this issue more appropriately addressed under that motion. Thus, the court will not address this issue in the context of the motion for reconsideration.

### D.      CONCLUSION

For the reasons set forth in this opinion, the court **DENIES** the County's Motion for Reconsideration of its Motion for Summary Judgment. (ECF No. 59).

**IT IS SO ORDERED**.

Date: June 13, 2022                                   s/Stephanie Dawkins Davis
                                                     Stephanie Dawkins Davis
                                                     United States District Judge