UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMMY SCHUETTE,

    Plaintiff,

v.

                                    Civil Case No. 18-10497
                                    Honorable Linda V. Parker

JACKSON COUNTY,

    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT (ECF NO. 84)

As this lawsuit now stands, Plaintiff Tommy Schuette alleges that Defendant Jackson County ("County") subjected him to a hostile work environment based on his disability (hearing loss) in violation of the Americans with Disabilities Act ("ADA") (Count V) and retaliated against him for reporting unlawful harassment in violation of 42 U.S.C. § 1981 (Count I), the Michigan Elliott-Larsen Civil Rights Act (Count II), and Title VII of the Civil Rights Act of 1964 ("Title VII") (Count IV).[1] The matter is presently before the Court on the County's second

---

[1] Plaintiff alleged a hostile work environment claim against the County under Michigan's Persons with Disabilities Civil Rights Act (Count III); however, summary judgment was granted to the County on that claim. (*See* ECF No. 54 at Pg ID 1522-23.) Plaintiff also named Steven P. Rand, the Sheriff of Jackson County, as a defendant. However, Rand filed a dispositive motion (ECF No. 33), which was granted (ECF No. 54.) As such, Plaintiff's claims against Rand have been dismissed.

1

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 84), which it was granted permission to file (ECF No. 81). The motion has been fully briefed. (ECF Nos. 85, 86.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

## Factual and Procedural Background

The Court assumes the reader's familiarity with the facts underlying Schuette's claims, which are set forth in a December 23, 2020 summary judgment decision issued by the Honorable Stephanie Dawkins Davis—to whom the case was originally assigned.[2] (ECF No. 54 at Pg ID 1478-84.) The Court discusses any additional facts only as needed in the analysis below.

On June 21, 2019, the County filed a summary judgment motion (ECF No. 35), which Judge Davis granted in part and denied in part in a December 23, 2020 decision (ECF No. 54). Judge Davis concluded in part that there were genuine issues of material fact as to the County's liability for the conduct of Steven P. Rand, the Sheriff of Jackson County, which Plaintiff alleges created the hostile work environment on which his ADA claim is premised. (*Id.* at Pg ID 1505-22.)

---

[2] On June 16, 2022, the matter was reassigned to the undersigned pursuant to Administrative Order 22-AO-036.

As particularly relevant to the County's current motion, Judge Davis addressed the affirmative defense to an employer's liability set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). (*Id.* at Pg ID 1520-22.) Judge Davis declined to consider the applicability of the defense, however, finding that the County failed to raise it in its Answer and only addressed it cursorily in its moving papers. (*Id.*) The County therefore moved to file a second summary judgment motion to raise the *Faragher* defense. (ECF No. 65.) Attached to the County's motion was a proposed second summary judgment motion. (ECF No. 65-1.) On July 18, 2022, the Court granted the County leave to file its motion. (ECF No. 82.)

On July 25, the County filed a Second Motion for Summary Judgment.[3] (ECF No. 84.)

## Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is

---

[3] The motion the County filed raises arguments that were not contained in its motion for leave to file the motion or its proposed motion. Specifically, the County goes beyond arguing the applicability of the *Faragher* defense and asserts that Schuette cannot prevail on his Persons with Disabilities Civil Rights Act ("PWDCRA") claim—a claim which the County concedes the *Faragher* defense does not apply. (ECF No. 84 at Pg ID 1929-30.) However, as noted earlier, Judge Davis granted summary judgment to the County on Schuette's PWDCRA claim. (*See* ECF No. 54 at Pg ID 1523.) As such, there is no consequence to the fact that the County's motion exceeds its permitted bounds.

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or

4

declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

## Analysis

There is no dispute that Rand was Schuette's supervisor. "[A]n employer is vicariously liable for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Clark v. UPS, Inc.*, 400 F.3d 341, 348 (6th Cir. 2005) (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999)) (emphasis added in *Clark* omitted). Stated differently, "an employer is *strictly liable* for supervisor harassment that 'culminates in a tangible employment action, *such as* discharge, demotion, or undesirable reassignment.'" *Penn. State Police v. Suders*, 542 U.S. 129, 137 (2004) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)) (emphasis added); *see also Faragher*, 524 U.S. at 808. Absent a tangible employment action, the employer may defend against a discrimination claim by showing both "that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (citing *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765).

5

## Whether Schuette Suffered a Tangible Employment Action

The County's first summary judgment motion did not raise the issue of whether Schuette suffered a tangible employment action;[4] and in its second summary judgment motion, the County begins from the premise that Schuette did not suffer such an action. However, the issue has never been resolved. Schuette argues in response to the County's pending motion "that Rand's, and to a lesser extent his senior command's, harassment caused [Schuette]'s inability to work. That is, the protracted harassment caused Plaintiff's PTSD which in turn, caused [Schuette]'s treaters to disable him from work." (ECF No. 85 at Pg ID 1966.) While Schuette did not quit—as is typically what occurs in a constructive discharge case—the Court believes that a comparison may be able to be made to a plaintiff who is compelled to go on sick or disability leave—as Schuette did—in response to severe and pervasive harassment which renders the plaintiff's working conditions intolerable.

---

[4] The County only argued that Schuette did not suffer an "adverse employment action" to support his retaliation claim. (*See* ECF No. 35 at 721.) Judge Davis rejected this argument, finding a genuine dispute with respect to the County's report of Schuette's secret recordings to the Michigan State Police as attempted blackmail. (ECF No. 54 at Pg ID 1532-33.) Judge Davis found no adverse employment action with respect to the County's failure to conduct a formal investigation of Rand and its failure to include Schuette's polygraph test in his personnel file, however. (*Id.* at 1533-34.)

A tangible employment action is not limited to discharges, demotions, and undesirable work assignments. These are only examples, as the Supreme Court's decisions make clear. *See Suders*, 542 U.S. at 137 (2004) (quoting *Ellerth*, 524 U.S. at 765) ("[A]n employer is strictly liable for supervisor harassment that 'culminates in a tangible employment action, *such as* discharge, demotion, or undesirable reassignment.'") (emphasis added). The term encompasses any "significant change in employment status . . . or a decision causing a significant change in benefits." *Id*. at 144 (quoting *Ellerth*, 524 U.S. at 761). In *Suders*, the Supreme Court resolved an inter-circuit split and held that a constructive discharge constitutes a tangible employment action precluding the employer from asserting the *Faragher* affirmative defense *but only where* "harassment so intolerable as to cause a resignation" was effected through official company acts.[5] *Suders*, 542 U.S. at 148 ("[W]hen an official act does not underlie the constructive discharge, the *Ellerth* and *Faragher* analysis, we here hold, calls for an extension of the affirmative defense to the employer."). The Court reasoned:

> harassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts. Unlike an actual termination, which is always effected through an official act of the company, a constructive discharge need not be. A constructive discharge involves both an employee's decision to leave and precipitating

---

[5] The *Suders* Court explained that the harassment "may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts." 542 U.S. at 148.

7

> conduct: The former involves no official action; the latter, like a harassment claim without any constructive discharge assertion, may or may not involve official action.

*Id.* at 148 (citation omitted).

The *Suders* Court discussed two circuit decisions to illustrate "how the 'official act' (or 'tangible employment action') criterion should play out when constructive discharge is alleged." The Court provided:

> In *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27 ([1st Cir.] 2003), the plaintiff claimed a constructive discharge based on her supervisor's repeated sexual comments and an incident in which he sexually assaulted her. The First Circuit held that the alleged wrongdoing did not preclude the employer from asserting the *Ellerth/ Faragher* affirmative defense. As the court explained in *Reed*, the supervisor's behavior involved no official actions. Unlike, "e.g., an extremely dangerous job assignment to retaliate for spurned advances," 333 F.3d, at 33, the supervisor's conduct in *Reed* "was exceedingly unofficial and involved no direct exercise of company authority"; indeed, it was "exactly the kind of wholly unauthorized conduct for which the affirmative defense was designed," *ibid*. In contrast, in *Robinson v. Sappington*, 351 F.3d 317 ([7th Cir.] 2003), after the plaintiff complained that she was sexually harassed by the judge for whom she worked, the presiding judge decided to transfer her to another judge, but told her that "her first six months [in the new post] probably would be 'hell,' " and that it was in her " 'best interest to resign.' " *Id*., at 324. The Seventh Circuit held that the employer was precluded from asserting the affirmative defense to the plaintiff's constructive discharge claim. The *Robinson* plaintiff's decision to resign, the court explained, "resulted, at least in part, from [the presiding judge's] official action in transferring" her to a judge who resisted placing her on his staff. *Id.*, at 337.

*Suders*, 542 U.S. at 149-50. The present case resembles *Reed*, not *Robinson*.

Schuette's inability to work—leading to his disability leave—allegedly resulted

8

from Rand's repeated comments and conduct. Schuette's need for disability leave did not result from official action, such as a reassignment that forced Schuette to be exposed to Randy's harassment, as was the case in *Robinson* and the other cases Schuette cites in his brief. (*See* ECF No. 85 at Pg ID 1967.)[6] As such, *Faragher*'s affirmative defense is available to the County.

The County bears the burden of proving the required elements of the defense by a preponderance of the evidence. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Again, those elements are: "(a) that the employer exercised reasonable care to prevent and correct promptly any [unlawfully] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807. As to these elements, the Supreme Court has provided:

> While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation

---

[6] Of course in a constructive discharge case, where the plaintiff's employment ends, the individual loses tangible benefits. If no benefits were lost as a result of Schuette going on disability leave, there may be no comparison to a constructive discharge case. Whether Schuette endured a loss of benefits (e.g., a reduction in pay) while on leave is unclear. The record is not developed on this point. However, because the Court finds no "official action" underlying Schuette's "decision" to take leave, it need not resolve this issue.

9

of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Id.* at 807-08.

## Whether the County Exercised Reasonable Care

To demonstrate that it used reasonable care to prevent and promptly correct harassing behavior, the County relies solely on the anti-harassment policy in its Non-Union Employee Handbook, which the evidence reflects is distributed to all County personnel when they are hired. (*See, e.g.*, Martonchik Decl. ¶ 7, ECF No. 84-2 at Pg ID 1937.) The County did not submit the handbook itself, although Schuette attaches it to his response brief. (*See* ECF No. 85-10.)

In *Clark*, the Sixth Circuit identified several necessary elements of "an effective [harassment] policy":

> While there is no exact formula for what constitutes a "reasonable" . . . harassment policy, an effective policy *should at least*: (1) require supervisors to report incidents of . . . harassment, *see Varner v. Nat'l Super Markets, Inc.*, 94 F.3d 1209, 1214 (8th Cir. 1996); (2) permit both informal and formal complaints of harassment to be made, *Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 541 (10th Cir. 1998); (3) provide a mechanism for bypassing a harassing supervisor when making a complaint, *Faragher*, 524 U.S. at 808, 118 S. Ct. 2275; and (4) and provide for training regarding the policy, *Wilson*, 164 F.3d at 541.

400 F.3d at 349-50 (emphasis added). The County's policy requires a formal complaint. (*See* ECF No. 85-10 at Pg ID 2075-76 ("It is the policy of the County

10

that any employee who, in good faith believes he or she has been subject to an illegal discrimination or harassment prohibited by law . . . must report that fact immediately in writing under the procedure set forth below. . . . Employees wishing to pursue the matter will be required to put the complaint in writing."). Further, there is no evidence that the County provides training regarding the policy.[7]

The Court also finds a genuine issue as to whether the policy covers more than "sexual harassment." There is a section of the handbook titled "HARASSMENT POLICY" which: (i) provides a general statement that the County's employment practices are based on job qualifications and not any suspect category (e.g., race, color, religion, age, handicap); and (ii) advises employees with disabilities who need accommodations of their duty to notify the human resources director in writing of such a need. (*Id*. at Pg ID 2074.) However, the County's actual harassment policies fall below a separate heading, in an identical font and size, titled, "SEXUAL HARASSMENT[.]" (*Id.* at Pg ID 2075.) Only "sexual harassment" is defined in the policy. (*Id.*)

While the handbook then contains a subheading titled "Reporting Illegal Discrimination or Harassment[,]" which refers to "illegal discrimination or

---

[7] Schuette maintains that the County did not disseminate the policy; however, this factual assertion is not supported by the evidence he cites to support it. (*See* ECF No. 85 at Pg ID 1970 (citing Schuette's and Brad Reed's declarations).)

harassment prohibited by law," the policy fails to identify or explain what form(s) of discrimination or harassment are unlawful. Stated differently, the handbook lists no prohibited form of discrimination or harassment except "sexual harassment." As a result, a reasonable juror could find that the policy does not adequately address unlawful harassment beyond sexual harassment.

Further enforcing the impression that the County's policy falls short is that the concluding sentence under the reporting subheading again focuses only on sexual harassment. (*Id.* at Pg ID 2076 ("Employees or officials accused of sexual harassment under this policy are strictly prohibited from taking retaliatory action against the employee seeking redress under this policy".) An employer cannot show that it took reasonable care to prevent harassment when its policies do not cover the harassment at issue. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72-73 (1986) (indicating that the mere existence of a grievance procedure and a policy against discrimination, along with an employee's failure to invoke the procedure, are not necessarily dispositive, such as where the employer's "general nondiscrimination policy did not address [the unlawful form of] harassment in particular [at issue in the lawsuit], and thus did not alert employees to their employer's interest in correcting that form of discrimination").

For these reasons, the County has not met its burden of proof as to the first element of the *Faragher* defense. "The defense comprises *two necessary*


elements." *Faragher*, 524 U.S. at 807 (emphasis added); *see also Clark*, 400 F.3d 341 ("The employer will lose this defense if it fails either prong."). Therefore, the Court finds it unnecessary to proceed further and **DENIES** the County's second summary judgment motion.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 1, 2023